UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:15-CV-00751-GNS-CHL


CHERRI BECKHART et al.                                                    PLAINTIFFS


v.


JEFFERSON COUNTY PUBLIC SCHOOLS
BOARD OF EDUCATION et al.                                               DEFENDANTS


<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter is before the Court on Plaintiffs' Motion to Certify Class and Appoint Class

Counsel (DN 57), and Plaintiffs' Motion for Oral Argument (DN 76).  The motions are ripe for

decision.  For the reasons stated below, Plaintiffs' Motion to Certify Class and Appoint Class

Counsel is **GRANTED**, and Plaintiffs' Motion for Oral Argument is **DENIED**.

## I.    <u>STATEMENT OF FACTS AND CLAIMS</u>

Effective June 25, 2012, the Jefferson County Board of Education and the Jefferson

County Association of Educational Support Personnel American Federation of State, County and

Municipal Employees on behalf of Local 4011 entered into a collective bargaining agreement

("CBA").  (Verified Compl. Ex. A, DN 1-2).  Under the CBA, Defendants American Federal of

State, County and Municipal Employees, AFL-CIO ("AFSCME"), AFSCME Indiana-Kentucky

Organizing Committee 962 ("Council 962"), and Jefferson County Association of Educational

Support Personnel, AFSCME, Local 4011 ("Local 4011") can collect a "fair share fee" from

non-members employed in the Jefferson County Public Schools ("JCPS").  (Verified Compl. Ex.

A, at 7-8).

In 2014 and 2015, Council 962 provided written notice to all fair share fee payers as required by the CBA. (Verified Compl. Exs. A-B, DN 1-3 to 1-4). On September 23, 2015, Plaintiffs—who are fair-share-paying non-members of the union—filed this action on behalf of themselves and others alleging the CBA and its enforcement are violations of their rights to free speech and association protected by the First and Fourteenth Amendments which give rise to claims under 42 U.S.C. § 1983. (Verified Compl. ¶¶ 72-92).

Plaintiffs have moved to certify a class of plaintiffs and for appointment of class counsel, which Defendants emphatically oppose. (Pls.' Mot. Class Certification & Appointment Class Counsel, DN 57; Defs.' Resp. Pls.' Mot. Class Certification & Appointment Class Counsel, DN 69). Plaintiffs also request oral argument on the motion. (Pls.' Mot. Oral Argument, DN 76).

## II.     JURISDICTION

This Court has subject-matter jurisdiction of this matter based upon federal question jurisdiction. *See* 28 U.S.C. § 1331.

## III.     DISCUSSION

### A.     Motion to Certify Class & for Appointment of Class Counsel

As outlined in the First Amended Complaint, Plaintiffs have defined the class as follows:

> The class consists of all union nonmember employees who, at any time since September 23, 2014 (and while this action is pending), are or were employed in the Job Family 1A job classification and salary schedule for Jefferson County Public Schools and are, were or will be required to pay a compulsory fee to Defendants Local 4011, Council 962, and/or AFSCME pursuant to a compulsory unionism agreement between the Unions and the Board.

(1st Am. Compl. ¶ 13). In determining whether to certify the proposed class, the Court must consider whether Plaintiffs have satisfied the requirements of Fed. R. Civ. P. 23(a) and (b).

### 1.     *Fed. R. Civ. P. 23(a)*

While this Court has broad discretion in certifying a class action, "it must exercise that discretion within the framework of Rule 23." *Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 446 (6th Cir. 2002) (citing *Cross v. Nat'l Tr. Life Ins. Co.*, 553 F.2d 1026, 1029 (6th Cir. 1977)). In relevant part, Fed. R. Civ. P. 23(a) sets forth the prerequisites for certifying a class and provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> **(1)** the class is so numerous that joinder of all members is impracticable;
> **(2)** there are questions of law or fact common to the class;
> **(3)** the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> **(4)** the representative parties will fairly and adequately protect the interests of the class.

Thus, as the moving party, Plaintiffs bear the burden of proof to "satisfy Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (citations omitted); *Coleman*, 296 F.3d at 446 (citing Fed. R. Civ. P. 23(a)). This Court may not certify a class unless all four requirements are met, and Plaintiffs "must demonstrate that the class fits under one of the three subdivisions of Rule 23(b)." *Coleman*, 296 F.3d at 446.

### a.     **Numerosity**

The numerosity requirement mandates that a class be "so numerous that joinder of all members is impracticable . . . ." The Sixth Circuit has held that "[t]here is no strict numerical test for determining impracticability of joinder." Fed. R. Civ. P. 23(a)(1); *In re Am. Med. Sys., Inc.*, 75 F.3d at 1079 (citation omitted). Rather, "[t]he numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel.*

*Co. of Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980). The "sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1)." *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004) (citation omitted). The Court may also consider the following factors in determining numerosity:

> (1) judicial economy arising from the avoidance of a multiplicity of actions; (2) the geographic dispersion of class members; (3) the financial resources of class members; (4) the ability of claimants to institute individual lawsuits; (5) the amount of each member's individual claim; (6) knowledge of the names and existence of the potential class members; and (7) whether potential class members have already joined other actions.

*Powell v. Tosh*, 280 F.R.D. 296, 303 (W.D. Ky. 2012) (internal quotation marks omitted) (quoting *Primavera Familienstiftung v. Askin*, 178 F.R.D. 405, 410 (S.D.N.Y. 1998)).

In their motion, Plaintiffs estimate that the proposed class includes approximately 900 non-members, and Defendants have previously admitted that "the number of persons in the class exceeds 700 persons for the 2014-15 and subsequent school years." (Pls.' Mem. Supp. Mot. Class Certification & Appointment Class Counsel 9; Defs.' Answer ¶ 14, DN 55). Thus, the likely size of the proposed class would satisfy the numerosity requirement. *See Bacon*, 370 F.3d at 570.

The geographical dispersion of the potential class members, however, weighs against numerosity. All of JCPS employees likely live in the area. (Pls.' Mem. Supp. Mot. Class Certification & Appointment Class Counsel 10). Thus, the close proximity of the potential class members would make joinder practical.

The financial resources factor weighs in favor of numerosity. As this Court has noted:

> One of the basic reasons for promulgating Rule 23 was to provide small claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individual litigation. Therefore, when the size of each claim is significant, and each proposed class member therefore possesses the ability to

> assert an individual claim, the goal of obtaining redress can be accomplished without the use of the class action device.

*Powell*, 280 F.R.D. at 304 (internal quotation marks omitted) (internal citation omitted) (quoting *Primavera Familienstiftung*, 178 F.R.D. at 411). The record developed thus far reflects that the "fair share" fees at issue per relevant fee year are as follows: $79 (September through December 2014); $239 (2015), and $212 (2016). (1st Am. Compl. Ex. D; Cochran Decl. ¶ 7, DN 57-2; Diemer Decl. ¶ 7, DN 57-3; Shina Decl. ¶ 7, DN 57-4; Thomas Decl. ¶ 7, DN 57-5; Thomas Decl. Ex. 1, 57-6). Due to the relatively small amount potentially owed to each class member, it would likely be cost-prohibitive for each member to pursue the claims individually.

In addition, it would appear to be relatively straightforward to identify the names and existence of the class members. This information should be readily available in Defendants' records. Thus, this factor would weigh against finding that the numerosity requirement has been met. *See Powell*, 280 F.R.D. at 304.

Finally, allowing these claims to proceed together as a class would be beneficial to judicial economy. Having more than 700 separate lawsuits involving the same issues and facts would be extremely inefficient, which supports allowing this matter to proceed with the proposed class.

After considering all of the factors, the Court concludes that the class of putative plaintiffs would meet the numerosity requirement of Fed. R. Civ. P. 23(a). While the proposed class members are in close geographical proximity, the sheer number of potential class members would make joinder impractical.

### b. Commonality

Plaintiffs must also satisfy the commonality requirement, which requires that "there [be] questions of law or fact common to the class . . . ." Fed. R. Civ. P. 23(a)(2). In general, this

requirement may be satisfied if there is a "single issue common to all members of the class." *In re Am. Med. Sys.*, 75 F.3d at 1080 (internal quotation marks omitted) (citation omitted). As the Supreme Court has stated, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury . . . .'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). As this Court has stated:

> The claims of the class members must depend upon a common contention; additionally, that common contention "must be of such a nature that it is capable of class[-]wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."

*Powell*, 280 F.R.D. at 305 (alteration in original) (quoting *Dukes*, 564 U.S. at 350).

In this case, Plaintiffs have framed the common issues of law as follows:

> One common question is whether Defendants have seized since September 23, 2014, and will continue to seize, compulsory union fees from Nonmembers in the absence of all of the constitutionally required *Hudson* notice and procedural safeguards, where such safeguards: i) fail to include independent audit verification of Council 962's expenses in the Revised Notice covering the Union's 2014 and 2015 fee years; ii) disclose expenses in Section A of the Revised and 2016 Notices as chargeable that clearly are not chargeable; iii) fail to explain unambiguously AFSCME and Council 962's allocation method used in Section B of the Revised and 2016 Notices to determine which expenses were chargeable when several expense categories within that section, as described, are not chargeable to Nonmembers; iv) fail to describe at the beginning of the Revised and 2016 Notices the allocation method used by Council 962 that was consistent with the Union's actual allocation of its expenses into chargeable and nonchargeable categories; and v) used constitutionally overbroad and vague descriptions in the Revised and 2016 Notices for some of the Unions' chargeable expenses. The second common question is whether AFSCME and Council 962 are charging Nonmembers for union activities not constitutionally chargeable to them under the First and Fourteenth Amendments for their 2014, 2015, and 2016 fee years, and will continue to do so in subsequent fee years.

(Pls.' Mem. Supp. Mot. Class Certification & Appointment Class Counsel 13-14). Plaintiffs have stated the common issues of fact are:

[Whether], at some period of time since September 23, 2014: (1) all are or were union nonmembers; (2) all are or were employed as Job Family 1A employees for JCPS; (3) all had and/or continue to have union monies seized from their wages; (4) none of them received all of the constitutionally required minimum notice and procedural safeguards from Defendants; and (5) all of them had compulsory union monies seized from their wages for AFSCME's and Council 962's activities not constitutionally chargeable to Nonmembers.

(Pls.' Mem. Supp. Mot. Class Certification & Appointment Class Counsel 14).

The Court finds that the commonality requirement is met among the potential class members. Each potential class member asserts he or she was employed by the JCPS, had and/or will continue to have union fees deducted from his or her wages, and that Defendants failed to comply with the constitutional requirements relating to the withholding of funds.

### c. Typicality

To certify a class under Fed. R. Civ. P. 23(a), a plaintiff must also prove that "the claims or defenses of the representative parties are typical of the claims or defenses of the class . . . ." Fed. R. Civ. P. 23(a)(3). "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1988) (internal quotation marks omitted) (quoting *In re Am. Med. Sys.*, 75 F.3d at 1082). "A claim is typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quoting *In re Am. Med. Sys.*, 75 F.3d at 1082).

Here, typicality exists because all of the claims of the proposed class members are virtually the same. These claims derive from the same fee deducted from each class member's paycheck during the relevant time period and involve the same notice provided by Defendants.

### d.    Adequacy of Representation

The final requirement is that Plaintiffs show that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Rule 23(a)(4) is designed to fulfill the due process requirements of the members of the class because a final judgment in a class action is binding on all members of the class." *George v. Baltimore City Pub. Schs.*, 117 F.R.D. 368, 371 (D. Md. 1987) (citation omitted). "The adequacy criteria tend to merge with the commonality and typicality requirements, although courts chiefly inquire whether the named plaintiffs' interests are antagonistic to those of the class, and whether class counsel are competent." *Spann v. AOL Time Warner, Inc.*, 219 F.R.D. 307, 320 (S.D.N.Y. 2014) (citations omitted). The Sixth Circuit has articulated two criteria to satisfy this requirement: "1) [t]he representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976) (citation omitted). *See also Powell*, 280 F.R.D. at 308 (citing *Senter*, 532 F.2d at 524-25).

Plaintiffs maintain that they have satisfied the common interests requisite because "[t]hey, like the proposed class, are nonmembers in Defendant Unions." (Pls.' Mem. Supp. Mot. Class Certification & Appointment Class Counsel 17 (citing Cochran Decl. ¶ 4; Diemer Decl. ¶ 4; Shina Decl. ¶ 4; Thomas Decl. ¶ 4)). Plaintiffs also argue that they have been the victims of the same wrongs as the proposed class: improper notices, improper withholding of fees, and improper charging of fees to them. (Pls.' Mem. Supp. Mot. Class Certification & Appointment Class Counsel 17 (citing Cochran ¶¶ 7-8; Diemer Decl. ¶¶ 7-8; Shina Decl. ¶¶ 7-8; Thomas Decl. ¶¶ 7-8)).

Plaintiffs have also presented affidavits from the named Plaintiffs to support the position that they will vigorously prosecute the interests of the class in this litigation. They met with counsel before filing this lawsuit, provided information about the subject of this litigation, and have interacted with counsel regarding this case. (Pls.' Mem. Supp. Mot. Class Certification & Appointment Class Counsel 18 (citing Cochran Decl. ¶¶ 5-12; Diemer Decl. ¶¶ 5-12; Shina Decl. ¶¶ 5-12; Thomas Decl. ¶¶ 5-12; Hartsfield Decl. ¶ 14, DN 57-9)).

In opposing the certification of the proposed class, Defendants have challenged whether Plaintiffs can satisfy this requirement. (Defs.' Resp. Pls.' Mot. Class Certification 6-25). In particular, Defendants assert: (i) "the class representatives have contractually agreed to a course of conduct that would require them, in the event of settlement discussions, to place the institutional interests of the organization that is funding the lawsuit ahead of the interests of the class they seek to represent"; and (ii) "the [class] representative[s'] interests are antagonistic to or in conflict with the objectives of those being represented." (Defs.' Resp. Pls.' Mot. Class Certification 7, 12 (internal quotation marks omitted) (first alteration in original)). Each of these arguments is addressed separately.

### i. Institutional Conflict

Plaintiffs have requested the appointment of Attorneys Milton L. Chappell ("Attorney Chappell"), an attorney employed by NRWLDF based in Springfield, Virginia, and Richard L. Masters ("Attorney Masters"), a partner in the firm of Masters, Mullins & Arrington in Louisville, Kentucky, as co-class counsel pursuant to Fed. R. Civ. P. 23(g).[1] (Pls.' Mem. Supp.

---

[1] On May 8, 2017, Attorney Sarah E. Hartsfield, an attorney employed by NRWLDF, filed a notice to withdraw her request to serve as class counsel and to withdraw as counsel in this matter. (Pls.' Notice Withdrawal Appearance & Request Appointment Class Counsel, DN 89; Pls.' Suppl. Notice Withdrawal Appearance & Request Appointment Class Counsel, DN 90).

Mot. Class Certification & Appointment Class Counsel 26-31, DN 57-1). Defendants oppose the appointment of any attorney employed by the National Right to Work Legal Defense Foundation ("NRWLDF") as class counsel because NRWLDF's "objective in funding class-action lawsuits like this one against public-sector unions is to defend the interests of *taxpayers*, by weakening the ability of unions to improve employee compensation and benefits paid from public funds at taxpayer expense." (Defs.' Resp. Pls.' Mot. Class Certification 26 (citation omitted)).

"The court reviews the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation . . . ." *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000) (citing *In re Am. Med. Sys..*, 75 F.3d at 1083). "Courts have previously approved class counsel with experience in conducting class actions as adequate." *In re Skechers Toning Shoe Prods. Liab. Litig.*, No. 3:11-MD-2308-TBR, 2012 WL 3312668, at *5 (W.D. Ky. Aug. 13, 2012) (citing *Smith v. Ajax Magnethermic Corp.*, No. 4:02-CV-0980, 2007 WL 3355080, at *4 (N.D. Ohio Nov. 7, 2007)). To determine whether the proposed class counsel is qualified, the Court must consider Fed. R. Civ. P. 23(g), which provides:

> **(1)** *Appointing Class Counsel.* Unless a statute provides otherwise, a court that certifies a class must appoint class counsel. In appointing class counsel, the court:
> **(A)** must consider:
> **(i)** the work counsel has done in identifying or investigating potential claims in the action;
> **(ii)** counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> **(iii)** counsel's knowledge of the applicable law; and
> **(iv)** the resources that counsel will commit to representing the class;
> **(B)** may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;

---

Thus, in addressing this motion, the Court will only consider the qualifications of Attorneys Chappell and Masters.

      **(C)**     may order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney's fees and nontaxable costs;

      **(D)**     may include in the appointing order provisions about the award of attorney's fees or nontaxable costs under Rule 23(h); and

      **(E)**     may make further orders in connection with the appointment.

**(2)**    ***Standard for Appointing Class Counsel.***  When one applicant seeks appointment as class counsel, the court may appoint that applicant only if the applicant is adequate under Rule 23(g)(1) and (4). If more than one adequate applicant seeks appointment, the court must appoint the applicant best able to represent the interests of the class.

Fed. R. Civ. P. 23(g)(1)-(2).

In applying the considerations articulated in Fed. R. Civ. P. 23(g), the Court concludes that Attorney Chappell and Attorney Masters have sufficient experience to be qualified to serve as co-class counsel in this case. Attorney Chappell has been licensed to practice since 1976 and has served as a staff attorney to the NRWLDF since 1977. (Chappell Aff. ¶¶ 3-4, DN 57-7). As a practicing attorney, he has handled both individual and class-action lawsuits of similar subject matter as the case *sub judice*. (Chappell Aff. ¶ 4).

Assuming arguendo that NRWLDF and its counsel were not qualified to serve as class counsel, Attorney Masters would certainly be. Attorney Masters has been licensed to practice law in the Commonwealth of Kentucky since 1979, and he has practiced with firm of Masters, Mullins & Arrington since 1990. (Masters Aff. ¶¶ 3-4, DN 57-8). Masters has also previously served in numerous other roles in public entities including as Assistant Attorney General for Kentucky. (Masters Aff. ¶ 4). Attorney Masters' practice areas have included the same subject matters at issue in the present litigation. (Masters Aff. ¶ 4). Attorney Masters also has been appointed to serve as class counsel in other state and federal cases. (Masters Aff. ¶ 5).

While Defendants impute any disqualification of NRWLDF counsel to Attorney Masters, the Court rejects that contention. (Defs.' Resp. Pls.' Mot. Class Certification 31 n.15). Attorney

Masters' continued participation in this litigation—assuming arguendo that NRWLDF's attorneys are disqualified—does not mean that Attorney Masters will not fulfill his ethical obligations to his clients rather than serve a particular cause of NRWLDF. Masters' firm also has sufficient resources for him to serve in that role without tapping the resources of NRWLDF. (Masters Aff. ¶ 11).

Separate from the qualifications of the proposed counsel, Defendants' challenge their ability to serve based on NRWLDF's representation of Plaintiffs. In serving in the capacity of class counsel, attorneys "must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4). NRWLDF's involvement in these types of cases has been challenged in numerous courts across the country with mixed results. It is apparent that part of Defendants' main concern relates to the nature of NRWLDF—an organization whose "mission is to eliminate coercive union power and compulsory unionism abuses through strategic litigation, public information, and education programs." *About*, National Right to Work Legal Defense Foundation, http://www.nrtw.org/about/ (last visited Sept. 15, 2017). As a sister court has noted, however, NRWLDF "is a 'bona fide, independent legal aid organization,' which has successfully sponsored class action litigation before the Supreme Court." *George*, 117 F.R.D. at 371 (internal citations omitted). Likewise, a sister court has noted the following in addressing a challenge to NRWLDF serving as class counsel:

> Defendants vociferously oppose certification of the named plaintiffs to act as class representatives and their counsel to fairly protect the class interests. Defendants' concerns over the motivation of plaintiffs' counsel or the National Right to Work Foundation, while perhaps understandable, are irrelevant to counsel's prosecution of this case. As long as the Foundation has no affect on the litigation of this matter, its doctrine and goals do not disqualify it from funding plaintiffs' assertion and protection of their First Amendment rights. Likewise, plaintiffs' counsel are bound by the same rules of procedure and conduct as are all counsel in federal court actions. Counsels' personal beliefs are irrelevant so long as they do not result in conduct violative of the applicable court rules. Should any

party discover or suffer from any improper conduct, there are appropriate means for challenging and, if necessary, sanctioning such activity.

*Bromley v. Mich. Educ. Ass'n-NEA*, 178 F.R.D. 148, 162 (E.D. Mich. 1998) (internal footnotes omitted).

Defendants mainly rely on the Seventh Circuit's decision in *Gilpin v. American Federation of State, County, and Municipal Employees*, 875 F.2d 1310 (7th Cir. 1989), in seeking to disqualify NRWLDF in this case. In *Gilpin*, NRWLDF filed suit on behalf of the plaintiff-employees against their union "seeking repayment to *all* the bargaining unit's nonunion employees of the *entire* agency fees collected by the union" for a school year, plus interest and punitive damages. *Id.* at 1313, 1316. After the trial court denied the certification of the proposed class and the appointment of NRWLDF as class counsel, the plaintiffs appealed. The Seventh Circuit affirmed that decision because it concluded that there was a serious conflict of interest within the proposed class. *See id.* at 1313. As that court noted:

> Two distinct types of employee will decline to join the union representing their bargaining unit. The first is the employee who is hostile to unions on political or ideological grounds. The second is the employee who is happy to be represented by a union but won't pay any more for that representation than he is forced to. The two types have potentially divergent aims. The first wants to weaken and if possible destroy the union; the second, a free rider, wants merely to shift as much of the cost of representation as possible to other workers, i.e., union members. The "restitution" remedy sought by the [NRWLDF] . . . , which represents the nine named plaintiffs, is consistent with—and only with—the aims of the first type of employee.

*Id.* The court also held that NRWLDF was not adequate counsel because it was seeking punitive damages on behalf of the class to financially punish the union while many of the class members would only seek to recover actual fees paid. *See id.*

Unlike in *Gilpin*, Plaintiffs only seek to recover fees improperly paid to Defendants and have not stated a claim for punitive damages. This important distinction renders *Gilpin*

inapposite. Since the *Gilpin* decision, other courts have held that NRWLDF's attorneys could adequately serve as class counsel. *See Murray v. Local 2620, Dist. Council 67, Am. Fed'n of State, Cty. & Mun. Emps., AFL-CIO*, 192 F.R.D. 629, 635-36 (N.D. Cal. 2000); *Cummings v. Connell*, No. CIVS992176WBS DAD, 1999 WL 1256772, at *5 (E.D. Cal. Dec. 20, 1999); *Bromley*, 178 F.R.D. at 162.

Besides NRWLDF's expressed anti-union mission, Defendants also criticize a disclosure agreement executed by NRWLDF's clients. When Plaintiffs retained NRWLDF to represent them in this action, they signed the agreement, which contains the following salient provisions:

> I understand that the Foundation's legal aid program is financed by voluntary contributions from the public and that it is essential to the Foundation's program for its other beneficiaries to be informed of the facts and developments of Foundation-sponsored cases in order to ascertain and secure their rights. For these reasons, I authorize the Foundation, should it provide me with legal assistance, to inform its beneficiaries, potential beneficiaries, supporters, potential supporters and the general public of the facts and developments of my case which may be available from non-privileged sources. In addition, I agree that I will not enter into a settlement agreement in my case which prevents or purports to prevent the Foundation from disclosing the terms of the settlement agreement or the facts and developments of my case which may be available from non-privileged sources.
> . . .
> I fully understand that this agreement may cause my adversaries to refuse to settle my case, and I freely accept that as a possible consequence of this agreement.

(Defs.' Resp. Pls.' Mot. Class Certification Exs., DN 69-10 to 69-15). Defendants also cite to deposition testimony from Plaintiffs in which they acknowledge that the execution of the agreement was a condition of representation. (Defs.' Resp. Pls.' Mot. Class Certification 8-9). Defendants argue that the terms of the disclosure agreement improperly create a potential conflict of interest between Plaintiffs and absent class members that renders Plaintiffs' interests "not 'coextensive with those of the class' they seek to represent," and maintain that the necessity

of the Court approving any final settlement does not eliminate this issue.  (Defs.' Resp. Pls.' Mot. Class Certification 10, 11 (citation omitted)).

In support of this argument, Defendants cite to *In re Ocean Bank*, No. 06 C 3515, 2007 WL 1063042 (N.D. Ill. Apr. 9, 2007).  In that case, the retainer agreement "contracted away [the class representative's] ability to direct the case by requiring her 'to follow the recommendation of [her] attorney in connection with whether this case should be settled and the terms of such settlement.'"  *Id.* at *6 (citation omitted).  Noting there are often potential conflicts of interest between class counsel and class members, the court explained that "[a] class representative cannot protect the class against the potential divergent interests of class counsel if he or she is contractually obligated to follow counsel's advice on settlement . . . ."  *Id.*  In stark contrast, the disclosure agreement at issue here exclusively addresses the issue of confidentiality and does not purport to otherwise empower class counsel to dictate the terms of settlement or condition any settlement on class counsel's approval.  Thus, the Court concludes that *In re Ocean Bank* is inapposite.

Likewise, Defendants' reliance on *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009), and *Radcliffe v. Experian Information Solutions Inc.*, 715 F.3d 1157 (9th Cir. 2013), is misplaced.  Both of those cases involved incentive awards, and as the *Radcliffe* court noted, "incentive awards [] corrupt the settlement by undermining the adequacy of the class representatives and class counsel."  *Radcliffe*, 715 F.3d at 1164.  In *Rodriguez*, the incentive agreement was not disclosed at the class certification stage "when it should have been and where it was plainly relevant" in determining adequacy.  *Rodriguez*, 563 F.3d at 959.  The present case, however, does not involve an incentive agreement, which renders it distinguishable.

The Court finds the decision in *George v. Baltimore City Public Schools* to be more analogous to the present case. In *George*, like the case *sub judice*, public school teachers sued to stop the deduction of union representation fees from the wages of nonunion members. *See George*, 117 F.R.D. at 369. NRWLDF also represented the plaintiffs in that case, and the defendants raised a similar challenge to the disclosure agreement signed by the plaintiffs. In rejecting arguments similar to Defendants', that court stated:

> Defendants also cite the [NRWLDF]'s . . . "Disclosure Agreement" to demonstrate how this organization controls plaintiffs' case. [The] writing [does not] give[] the [NRWLDF] or its attorney unfettered control over plaintiffs' litigation. The "Disclosure Agreement" insures that plaintiff will not forfeit in settlement the right to disclose the case history and settlement terms. This enables the [NRWLDF] to publicize its recent legal aid advances. [The] document [does not] allow[] the [NRWLDF] to control plaintiffs' case.

*George*, 117 F.R.D. at 371. This Court agrees with the *George* court's conclusion that the disclosure agreement does not improperly remove control from Plaintiffs and does not preclude a finding of adequacy to certify the proposed class.[2]

---

[2] Defendants' argument regarding the disclosure agreement also seems illusory given the applicability of the Kentucky Open Records Act ("Act") to JCPS. The Act applies to any "public agency," which is defined to include "every . . . school district board . . . ." KRS 61.805(2)(c). It provides that "[a]ll public records shall be open for inspection by any person, except as otherwise provided by KRS 61.870 to 61.884", and "[a]ny person shall have the right to inspect public records." KRS 61.872(1), (2). As a sister court has explained, "[t]he public's 'right to know' under the Open Records Act is premised upon the public's right to expect its agencies properly to execute their statutory functions." *Williams v. City of London*, 252 F. Supp. 2d 388, 400 (E.D. Ky. 2003) (internal quotation marks omitted) (citation omitted). As the Kentucky Supreme Court has noted, however, "[t]here could be no viable contention that an agreement which represents the final settlement of a civil lawsuit whereby a governmental entity pays public funds to compensate for an injury it inflicted is not a public record." *Lexington-Fayette Urban Cty. Gov't v. Lexington Herald-Leader Co.*, 941 S.W.2d 469, 471 (Ky. 1997). *See also Washington v. City of Georgetown*, No. 08-402-KSF, 2009 WL 530782, at *5 (E.D. Ky. Mar. 3, 2009) (discussing the lack of confidentiality applicable to settlement agreements with governmental entities); *Cent. Ky. News-Journal v. George*, 306 S.W.3d 41, 46 (Ky. 2010) (holding that confidential settlement agreements between a school board and certain employees were not exempt from disclosure under the Act because "[the settlement agreements are presumably public records subject to disclosure, regardless of their confidentiality provisions.").

For these reasons, Attorney Chappell and Attorney Masters satisfy the requirements of Fed. R. Civ. P. 23(g)(1)-(2) to be appointed co-class counsel in this case. Defendants have failed to show that there is an institutional conflict that would preclude these attorneys—including one employed by NRWLDF—from representing the proposed class members in this case.

### ii.    Antagonistic Interests

Defendants also oppose certification of the class because they maintain that the class representatives are inadequate to serve the interests of entire class. (Defs.' Resp. Pls.' Mot. Class Certification 12). "[T]he existence of minor conflicts alone will not defeat a party's claim to class certification: the conflict must be a 'fundamental' one going to the specific issues in controversy." *Valley Drug. Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (8th Cir. 2003) (citations omitted). In particular, Defendants assert that the seminal case on this issue is the Supreme Court's decision in *Hansberry v. Lee*, 311 U.S. 32 (1940), which they maintain illustrates the type of intraclass conflict that precludes certification. (Defs.' Resp. Pls.' Mot. Class Certification 12). Citing *Hansberry*, the Sixth Circuit has stated that "[i]t is well settled that the constitutional requirements of due process and full faith and credit mandate that absent class members are not bound by a judgment in a class action unless the class representative provided adequate and fair representation." *Nathan v. Rowan*, 651 F.2d 1223, 1227 (6th Cir. 1981) (citations omitted). As one treatise has cautioned:

> *Hansberry* should not be read too broadly, however. The issue of adequacy of representation in that case was raised as a means of collaterally attacking the class judgment. Thus, once the court found that there were some class members against the enforcement of the covenant, there was no way to avoid the necessarily conflicting interests. In cases in which this sort of conflict is raised at the outset of the action, the court need not dismiss the suit on grounds of

---

Accordingly, any settlement agreement in which JCPS contributed funds to the settlement would involve the expenditure of public funds and would likely be subject to public disclosure under the Act.

inadequate representation simply because all persons subject to a challenged agreement or regulation do not agree with the named representative. The court may use one of a wide assortment of curative mechanisms available in Rule 23 to assure proper representation. As long as both those seeking to uphold and those desiring to strike the particular regulations are adequately represented, the suit may proceed as a class action.

7A Charles Alan Wright et al., *Federal Practice & Procedure* § 1768 (3d ed. 2017) (internal footnotes omitted).

In this case, the injuries allegedly incurred by Plaintiffs are substantially the same as the injuries of the proposed class members. The factual circumstances and the legal theories on which Plaintiffs' claims are based are also similar, if not identical. Thus, Plaintiffs share common interests with the members of the proposed class.

Plaintiffs argue that this case is about redressing violations of the class members' constitutional rights, rather than weakening or destroying unions. (Pls.' Reply Mot. Class Certification & Appointment Class Counsel 5, DN 75). Clearly, the parties are antagonistic to each other, but the Court is not going to second-guess the class representatives' stated motive. Moreover, the relief sought by Plaintiffs appears tailored to redress harm caused by the alleged improper notices rather than punish Defendants like in *Gilpin*.

For these reasons, the Plaintiffs' views are not antagonistic to the proposed class and do not preclude certification of the proposed class in this matter. Based on the claims asserted by Plaintiffs and the facts outlined in the Complaint, Plaintiffs have satisfied the requirements for class certification pursuant to Fed. R. Civ. P. 23(a).

### 2. Fed. R. Civ. P. 23(b)

After determining that requirements of Fed. R. Civ. P. 23(a) have been met, the Court must determine whether to certify the proposed class under Fed. R. Civ. P. 23(b). In particular, Plaintiffs seek certification of the proposed class of plaintiffs under Fed. R. Civ. P. 23(b)(1), (2),

and (3). (Pls.' Mem. Supp. Mot. Class Certification & Appointment Class Counsel 20-26). Each of these subsections is addressed below.

### a. *Fed. R. Civ. P. 23(b)(1)*

Rule 23(b) provides that a court may permit a class action if:

> **(1)** prosecuting separate actions by or against individual class members would create a risk of:
>> **(A)** inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>> **(B)** adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests . . . .

Fed. R. Civ. P. 23(b)(1). As the Advisory Committee has noted with regard to Fed. R. Civ. P. 23(b)(1):

> The difficulties which would be likely to arise if resort were had to separate actions by or against the individual members of the class here furnish the reasons for, and the principal key to, the propriety and value of utilizing the class-action device. The considerations stated under clauses (A) and (B) are comparable to certain of the elements which define the persons whose joinder in an action is desirable as stated in Rule 19(a), as amended.

Fed. R. Civ. P. 23 advisory committee's note (citations omitted).

"For this subsection of Rule 23(b) to apply, the party opposing the prospective class must be subject to the risk of inconsistent adjudications that would establish incompatible standards of conduct." *Leer v. Wash. Educ. Ass'n*, 172 F.R.D. 439, 451 (W.D. Wash. 1997) (citing *Winder Licensing, Inc. v. King Instrument Corp.*, 130 F.R.D. 392, 394 (N.D. Ill.1990)). Given the number of separate lawsuits that could be filed if the proposed class were not certified, there is serious risk that courts could impose different and inconsistent duties upon Defendants. Sister courts have certified the proposed classes of nonunion members in similar challenges to the sufficiency of the *Hudson* notice under Fed. R. Civ. P. 23(b)(1). *See Murray*, 192 F.R.D. at

636; *Hohe v. Casey*, 128 F.R.D. 68, 71 (M.D. Pa. 1989); *Hunter v. City of Philadelphia*, No. CIV.A. 98-4598, 1999 WL 181388, at *3 (E.D. Pa. Jan. 29, 1999); *Mitchell v. Los Angeles Unified Sch. Dist.*, 744 F. Supp. 938, 944 (C.D. Cal. 1990), *rev'd on other grounds*, 963 F.2d 258 (9th Cir. 1992). Accordingly, the Court will certify the proposed class pursuant to Fed. R. Civ. P. 23(b)(1).

**b.      *Fed. R. Civ. P. 23(b)(2)***

Although it is unnecessary to certify the proposed class under more than one subsection of Rule 23(b), the Court will consider Plaintiffs' request for certification under Fed. R. Civ. P. 23(b)(2). Under that subsection, a class action may be maintained if, *inter alia*, "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . . ." Fed. R. Civ. P. 23(b)(2). As the Advisory Committee's note reflects:

> This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate. Declaratory relief "corresponds" to injunctive relief when as a practical matter it affords injunctive relief or serves as a basis for later injunctive relief. The subdivision does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages. Action or inaction is directed to a class within the meaning of this subdivision even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class.

Fed. R. Civ. P. 23 advisory committee's note (citation omitted).

The Court believes that the present dispute clearly falls under Fed. R. Civ. P. 23(b)(2). While Plaintiffs do seek recovery of the fees paid under allegedly deficient *Hudson* notices, the main thrust of this action is a determination of whether the notices provided by the JCPS complied with *Hudson*. It is also noteworthy that sister courts have certified proposed classes

pursuant to Fed. R. Civ. P. 23(b)(2) in similar cases. *See Murray*, 192 F.R.D. at 636-37; *Hohe*, 128 F.R.D. at 71; *Hunter*, 1999 WL 181388, at \*3; *George*, 117 F.R.D. at 372; *Damiano v. Matish*, 644 F. Supp. 1058, 1059 (W.D. Mich. 1986), *rev'd on other grounds*, 830 F.2d 1363 (6th Cir. 1987). Accordingly, the Court will certify the proposed class pursuant to Fed. R. Civ. P. 23(b)(2).

### c. *Fed. R. Civ. P. 23(b)(3)*

Lastly, Plaintiffs request certification under Fed. R. Civ. P. 23(b)(3), which is appropriate in cases where "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). As the advisory committee has noted:

> In the situations to which this subdivision relates, class-action treatment is not as clearly called for as in those described above, but it may nevertheless be convenient and desirable depending upon the particular facts. Subdivision (b)(3) encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.

Fed. R. Civ. P. 23 advisory committee's note (citation omitted). The Sixth Circuit has explained that Rule 23(b)(3) is best suited for certain types of cases:

> In complex, mass, toxic tort accidents, where no one set of operative facts establishes liability, no single proximate cause equally applies to each potential class member and each defendant, and individual issues outnumber common issues, the district court should properly question the appropriateness of a class action for resolving the controversy. However, where the defendant's liability can be determined on a class-wide basis because the cause of the disaster is a single course of conduct which is identical for each of the plaintiffs, a class action may be the best suited vehicle to resolve such a controversy.

*Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1998).

In light of advisory committee's note and the *Sterling* decision, the Court believes that the present case is not appropriate for certification under Fed. R. Civ. P. 23(b)(3). A basic set of operative facts applies to all claims for the potential class members. Thus, the Court will not certify the proposed class under Fed. R. Civ. P. 23(b)(3).

While the facts of this case lend themselves to certification under Fed. R. Civ. P. 23(b)(1) and (2), this is not a mass-tort type of case where certification under Rule 23(b)(3) is appropriate. Accordingly, the Court declines to certify the proposed class under Fed. R. Civ. P. 23(b)(3).

### B.    Motion for Oral Argument

Plaintiffs have also moved for oral argument on their motion to certify. (Pls.' Mot. Oral Argument, DN 76). Because the Court finds that oral argument is unnecessary to address the issues raised by the parties, the motion will be denied.

## IV.    CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1.     Plaintiffs' Motion for Class Certification and Appointment of Class Counsel (DN 57) is **GRANTED**, and Counts II and III of this action shall be maintained as a plaintiff class action under Fed. R. Civ. P. 23(b)(1)(A) and 23(b)(2) by Plaintiff Class Representatives on behalf of the class, defined as:

> All union nonmember employees who, at any time since September 23, 2014, (and while this action is pending), are or were employed in the Job Family 1A classification and salary schedule for Jefferson County Public Schools and are, were or will be required to pay a compulsory fee to Defendants Jefferson County Association of Educational Support Personnel, American Federation of State, County and Municipal Employees Local 4011 ("Local 4011"), American Federation of State, County and Municipal Employees, Indiana-Kentucky Organizing Committee 962 ("Council 962"), and/or American Federation of State, County and Municipal Employees, AFL-CIO pursuant to a compulsory unionism agreement between Local 4011, Council 962, Jefferson County Public Schools Board of Education, and Donna M. Hargens, Superintendent.

Attorneys Milton L. Chappell and Richard L. Masters are appointed as co-class counsel for Plaintiffs as they meet all of the requirements of Fed. R. Civ. P. Rule 23(g) for class counsel.

    2.        Plaintiffs' Motion for Oral Argument (DN 76) is **DENIED**.

**Greg N. Stivers, Judge**
**United States District Court**

September 18, 2017

cc:      counsel of record